JOHN W. LEWIS, Superintendent of Western and Atlantic Railroad Company, plaintiff in error, *vs.* SUSAN WHIDBEE, defendant in error.

·NOTE.—WARNER, C. J., did not preside in this case.

A charge not warranted by the facts should not be given to the jury.

Case.   In Fulton Superior Court.   Tried before Judge WARNER, April Term, 1867.

On or about the 17th July 1857, the slave of Mrs. Whidbee was killed at Marietta, by the cars of the Western and Atlantic Railroad, and she brought her action to recover damages therefor.

The testimony on her part was as follows :

HUGH BUCHANAN, in answer to interrogatories, stated : There was a freight train at the depot when I went up, and a negro man on the right hand side, as you go towards Atlanta; the negro had a wagon loaded with sand, pulled by two mules ; he was at or near the crossing of the railroad, below, or in the direction of Atlanta from the Fletcher House ; the mules' heads were toward the railroad ; the crossing, when I first saw the negro, was obstructed by the freight train, or the engine of the train was very near the crossing, just above it.   ("I am inclined to think the latter was the case.")

The negro appeared to be waiting for the train to pass ; the train started towards Atlanta, and passed some distance ; can't say how far below the crossing ; the negro started his team to cross the railroad, and when the team was crossing the railroad the train ran back ; witness thought it ran back very fast for a backing train ; witness thinks the negro saw the train backing about the same time, as he commenced whipping his mules and urging them across the railroad ; just before the train reached the team, the mules ran off the track, and the wagon on it ; the negro jumped off the wagon, on opposite side from the train, and fell across the track ; witness does not think his feet reached or struck the ground first ; he appeared to fall with his side on the track, and a

Lewis, sup't, *vs.* Whidbee.

portion of the freight train passed over him; can't say whether one or more cars passed over him; saw some person pull him out on the side of the road; witness did not go where the negro was; did not know whether he was killed; the witness, did not know the negro, nor to whom he belonged; he was a young negro man, small, rather below medium height, and of dark complexion. Witness knows not whether the crossing was a public street or not.

### CROSS-EXAMINED.

He said the negro was waiting to cross when train left; can't say how long he waited after train passed; not long, but until the train was some distance below the crossing; witness thinks the engine and a large part of the train had passed round the curve below the crossing; don't know the distance nor what time elapsed—not long; the train started, and was going fast after passing the crossing, and backed (I thought) very fast for a backing train; it ran back on the sideling; I do not know how wide the road-bed is; I think there are two tracks at the crossing; it may be thirty or forty feet wide; I do not know how long it would take such a team to cross; I thought this team moved slowly, even when the negro urged them; the crossing was down the road as far as the curve, but do not know how far that is.

WILLIAM R. ANDERSON testified that he knew plaintiff's slave Cicero, and that he was killed as aforesaid, stating in substance the same as Buchanan had stated; witness did not think any signal was given for reversing the train; it was reversed quickly; the engineer tried to stop it, but could not.

The train seemed to have started for Atlanta, and he, like the negro, would have concluded that it was gone; can't say whether the train was running in or out of time; the crossing was a public street. He describes the negro as Buchanan did; says he was about twenty years old, and worth about $1,100.00 when killed. The Western and Atlantic Railroad runs through Marietta and corner of Fulton County.

DANIEL BURKHALTER testified that he knew the negro

and saw him killed, and described the circumstances in substance as the two witnesses aforesaid.  He said the train was moving slowly, was reversed suddenly, that it had passed thirty or forty yards below this public street when the wagon tried to get over, that witness did not hear the signal for reversal given, that the bed of the road is fifteen or twenty feet at the crossing, and the crossing much traveled.

### CROSS-EXAMINED.

He said he was about twenty feet from the train, in the street, and saw the train run over the negro.

D. S. ANDERSON testified that the negro was fourteen years old, worth $1,000.00 ; he saw him killed by the train ; his mules had gotten across, but before his wagon got across the train ran on it ; the negro jumped off between the mules, was thrown back, and one wheel of the car ran over him, causing almost instant death ; if the negro had jumped to the left instead of the right, he would not have been injured, or had he stayed on the wagon, he would have escaped.  It was on the main track, witness thinks.

The negro could have seen the train backing, but got too far on the track to escape, except by jumping to the left ; witness thinks the train was pulled up to start for Atlanta, but was reversed to prevent a collision with train coming from Atlanta ; it had hardly left the crossing before it commenced backing.  The switch is from seven to ten steps from the crossing ; the negro started across before the train commenced backing ; the man on the engine could not have seen the boy, owing to the curve in the road.

### CROSS-EXAMINED.

The crossing was a public one, used every day ; the train had about ten cars ; the hind one had hardly passed when negro tried to cross ; the engine did not get out of witness' sight ; train came back at usual speed of trains when backing from distance it went ; engineers usually give a signal

when reversing an engine; there was another train coming, and this caused the reversal, witness thinks.

Here plaintiff's case was rested.

Defendant introduced John Bamrott, who testified that he knew the boy; that he was killed by defendant's cars in 1857, in the spring, he thought; that he was plaintiff's property, and worth $1,000.00; the train of cars was switching back and forth; the boy was apparently waiting the movement of the train; as soon as the train passed, he moved his team to cross; the engine was reversed, ran back, and the boy was killed before he could possibly get off the track; the boy's conduct was quiet and orderly; he was ten or fifteen steps from the track, and could have seen the train backing; he commenced crossing when it commenced backing; thinks last car in train had passed crossing from five to twenty steps before it backed; switch not over ten feet from crossing; don't think engineer could have seen the boy if his train was a long one, because of a curve in the road; witness was on the platform in front of his hotel, about five steps from railroad track, and about fifty steps from the boy when he was killed; the boy waited ten or twenty minutes; was crossing towards public square; don't recollect whether the usual reversing signal was given; the train came back slowly, but can't give its exact speed.

W. J. Scott testified as to the killing in substance as the others; he said the train came backs slowly; it did not whistle when it started back; slave was twenty-two or three years old, and worth $1,200.00; witness was about forty yards from where the boy was killed, and thinks engineer could have seen him; don't know why the train backed, nor whether it was to avoid collision; trains frequently meet and pass there, and the crossing is a very public one; thought the boy took a risk in trying to cross, but has seen others do so without injury.

Coley Beavers testified that he saw the boy killed; witness was fireman on the engine of the train that killed him; it was a freight train coming to Atlanta, and was due at Marietta a little before the up freight train; the freight trains

Lewis, sup't, *vs.* Whidbee.

passed at Marietta, and this train arrived there ahead of the up train; his train stopped at Marietta and unloaded way-freight, and then pulled out to shift off and leave some cars, and to take on others; the hindmost car had hardly left the crossing where the boy was standing with his wagon, before he attempted to cross; witness heard the man at the switch halloo to the boy not to come on the railroad, that he would be killed by the cars; witness was about midway on the tender on look-out, and saw the boy, or his mules, on the road, and hallooed to the engineer that he would run over the boy; the engineer reversed the engine, throwing her forward so as to prevent a collision with the wagon and mules and boy, and put on all steam, but could not stop in time; it was moving on down grade at the time; the engine was reversed suddenly, and ran back for fear of a collision with a train coming up from Atlanta; on account of curve and situation of train and engine, engineer could not see the boy when he started to cross; the train had not started to Atlanta, but was switching as aforesaid; it had hardly passed before boy tried to cross; witness is now, and has for many years, been employed for defendant.

### CROSS-EXAMINED.

Our train not very long, eight or ten cars; witness not over two hundred feet from boy when killed; the reversal was to avoid collision with up train; his train was a little out of time; train from Atlanta was in time; the train went back on same track it started out on; it was down grade, and so the backing train went back fast.

The defendant's counsel requested the Court to charge the jury as follows: That if the plaintiff and defendant are both found to be negligent, and the plaintiff could have avoided the effects of defendant's negligence in the use of ordinary diligence, and did not, then the defendant is not liable.

The Court refused so to charge, but charged as follows:

If defendant was exclusively at fault, plaintiff is entitled to recover. If the plaintiff is exclusively at fault, she is not

entitled to recover.  If both parties were at fault, the plaintiff may recover, but the damages shall be diminished by the jury in proportion to the amount of default attributable to her.

To which refusal to charge defendant excepted.

The jury found for the plaintiff $1,200 damages with costs. Counsel for defendant, during the term, moved for a new trial, because of the refusal to charge as aforesaid, and because the verdict is contrary to evidence and the weight of evidence, and contrary to law.

The Court refused a new trial, and this is assigned as error.

S. B. HOYT, represented by N. J. HAMMOND, for plaintiff in error.

JOHN COLLIER, by JOSEPH E. BROWN, for defendant in error.

WALKER, J.

The Court below was satisfied with this third verdict, concurring almost precisely with its two predecessors.  We are satisfied that it is not too large; it might well have been larger.  The great weight of the testimony shows that the negro was not at all at fault; and we apprehend the jury failed to increase the verdict by adding interest as damages in consequence of the charge given on the subject of both parties being at fault.  If the charge asked had been given, and the jury in consequence thereof had found for defendant, the verdict should have been set aside.  Such being the case, should a charge have been given the tendency of which was to produce a verdict that could not be permitted to stand? Would it not, in legal contemplation, be a charge not applicable to the facts of the case?  We think so, and therefore the Court did right to refuse to give it.  Though there may be some slight evidence in favor of a hypothesis, but not

sufficient to uphold a verdict, should that hypothesis be submitted to the jury? For what purpose; to what good end? The only effect it could have would be to lead the jury into error.

Judgment affirmed.